## York v. Shoemaker, Thompson & Ness

*Donald B. Hoyt, Assistant Solicitor*, for plaintiff.
*John W. Thompson, Jr.*, for defendants.

BUCKINGHAM, *J.*, July 3, 1980—This matter is before the court on a rule to show cause why the defendants, Shoemaker, Thompson & Ness, a partnership of lawyers engaged in the practice of law with offices in the City of York (City) should not be held in contempt for refusing to permit the City's Tax Officer to inspect the firm's books for the purpose of aiding the collection of the City's business privilege tax against lawyers. By an opinion and order of this court filed August 11, 1978 defendants were required to submit to such inspection. Defendants appealed this order to the Commonwealth Court of Pennsylvania which refused to decide the validity of the City's tax and quashed the appeal because the City told the court that it was not interested in seeing the names of defendants' clients, only their gross receipts.

We first have to decide whether it would be an unnecessary hardship on defendants to cover the names of their clients if the books and records are opened to inspection to the City. At oral argument before this court, it was stipulated by counsel that for the four tax years involved, there were one hundred pages, ten inches by fifteen inches in size in defendants' accounting ledger, with two columns of clients' names on each page, which would have to be covered to hide the names of the clients. We hardly think this would constitute an undue hardship on defendants.

As to the validity of the tax, the City contends that our prior ruling is the law of the case and, therefore, defendants cannot now raise the merits of the tax. However, we prefer to address this issue on the merits and not dismiss defendants' argument on technical grounds.

We hold that the City's business privilege tax, as it applies to these defendants, is valid and constitutional. The City, being a third class city, clearly had authority to enact a business privilege tax under The Local Tax Enabling Act of December 31, 1965, P.L. 1257, 53 P.S. §6901 et seq.: F. J. Busse Company v. Pittsburgh, 443 Pa. 349, 279 A. 2d 14 (1971); Munnell Appeal, 219 Pa. Superior Ct. 525, 281 A. 2d 906 (1971). A business privilege tax against lawyers has been upheld by the Northampton County Court in In Re: Business Privilege Tax of City of Easton, 457 October Term, 1977, in an unreported opinion filed March 7, 1979.

Both sides agree that if the state had preempted the field, the defendants are exempt from the tax. Defendants claim that the state has preempted by virtue of the fact that lawyers are required to pay a fee to the Disciplinary Board of the Supreme Court. We reject this argument, as did Judge Franciosa in In Re: Business Privilege Tax of City of Easton, supra, from which we quote:

"As [to] his first contention, petitioner argues that the assessment of attorneys by the Disciplinary Board of the Supreme Court* constitutes 'a revenue raising license fee.' If the petitioner's position is correct, then the city would be precluded from levying its Business Privilege Tax upon the activities of an attorney. See National Biscuit Co. v. Philadelphia, 374 Pa. 604, 98 A. 2d 182 (1953).

"It appears to us, however, that the cases which have attempted to answer this first question do not support petitioner's argument. The approach of all the cited cases has been to oust the power of the

*Pa. R.D.E. 219.

local municipality only when the legislature has enacted a revenue-producing measure covering the same person, transaction, occupation, activity, privilege, subjects or personal property. Tax Review Bd. v. Smith Kline & French Lab., 437 Pa. 197, 262 A. 2d 135 (1970). Here, the 'fee' raised as 'double taxation' is imposed under the rule making powers of our Supreme Court. But, assuming the same test of a 'regulatory' license fee applies to such a state-wide rule, we find that the assessment is a regulatory measure promulgated under the Supreme Court's administration and enforcement powers. Thus, the City of Easton is not barred by the annual fee payable under Rule 219, supra.

"Also, we attach no significance to an alleged surplus produced by the assessment. Rule 219 expressly limits the use of the fee to defrayal of 'the costs of disciplinary administration and enforcement . . . and for such other purposes as the Board shall, with the approval of the Supreme Court, from time to time determine.' Obviously, such language strips the assessment of the characteristics of a 'general revenue' fund."

See also Man, Levy and Nogi v. School District of City of Scranton, 31 Pa. Commonwealth Ct. 75, 375 A. 2d 832 (1977), where the court held that the state's gross premiums tax imposed on an insurance agency under the Tax Reform Code of 1971 did not preempt a municipality's business privilege tax on the same insurance agency.

Second, the defendants contend that they are exempt under a portion of The Local Tax Enabling Act of 1965, as set forth in 53 P.S. §6902(1), which precludes the local taxing authorities from imposing a tax on a "privilege, transaction, subject, occupation or personal property which is now or does

hereafter become subject to a State tax or license fee. . . ." This contention lacks merit. In Tax Review Bd. v. Smith, Kline & French Lab., supra, the court held that a state license fee is interpreted to mean only those fees imposed for the purposes of raising revenue. As we have pointed out, the fee paid to the Disciplinary Board of the Supreme Court is not a revenue raising measure. Its only object is to regulate the activities of the legal profession.

Third, defendants contend they come within the purview of United Tavern Owners of Philadelphia v. Philadelphia School District, 441 Pa. 274, 272 A. 2d 868 (1971). We disagree. This case involved the liquor law and, as such, is special. We believe that the liquor law cases do not apply in the present situation. In United Tavern Owners, supra, the court held that the state preempted the specific field of liquor sales for taxation purposes and therefore the Philadelphia School District was barred from imposing a tax on the same thing.

However, in areas other than liquor, the courts have held that the same reasoning does not apply. In National Biscuit Company v. Philadelphia, 374 Pa. 604, 98 A. 2d 182 (1953), the court held that fees paid by insurance agents and brokers did not make them exempt from taxation by local ordinance. A flat rate entirely unrelated to the licensee's volume of business cannot be called a license fee. The fee mentioned in Pittsburgh Milk Co. v. Pittsburgh, 360 Pa. 360, 62 A. 2d 49 (1948), cited by defendant, was discussed in National Biscuit Co., supra, at page 622, where the court said:

"A maximum charge of $20 for a bakery with a minimum use of 200 barrels of flour per week irrespective of the magnitude of the volume of its business beyond that minimum, is far different

than the fees charged in the Pittsburgh Milk Co. case ranging up to $5,000 a year."

Fourth, defendants claim there is no difference between the City's business privilege tax and the occupational privilege tax which is limited to $10.00 per year. This issue was specifically addressed in Munnell, supra, at page 529, where the court said:

" . . . the Occupational Privilege Tax is on the privilege of engaging in an occupation, which is a different tax from a tax on the privilege of engaging in a business. For example: A lawyer who works for a corporation is engaging in an occupation; a lawyer who establishes an individual practice is not only engaging in an occupation but is, additionally, engaging in a business. The two taxes reach entirely different privileges and thus do not duplicate one another."

Defendants rely on Banger's Appeal, 109 Pa. 79 (1885), for their argument that the City's business privilege tax and its occupation tax are the same. However, Banger's Appeal is inapposite. There the court simply held that Williamsport enacted an unlawful income tax under the guise of an occupation tax.

Fifth, defendants argue that the City's business privilege tax violates the uniformity clause of the constitution. This argument was sufficiently addressed in F. J. Busse Co., supra. We believe the exclusion of wage earners from the definition of persons engaging in a business, trade, occupation or profession is a reasonable distinction. As was said by Judge Franciosa in In Re: Business Privilege Tax of City of Easton, supra:

"The next constitutional challenge arises from petitioner's claim that administration of the city's tax lacks uniformity. We disagree. Substantial uniformity is the requirement in taxation. Appeal of Hilton, 199 Pa. Super. 586, 186 A. 2d 635 (1962). Because taxation is not a matter of exact science, perfect uniformity and absolute equality is not required. Tax Review Bd. v. C. J. Devine & Co., 184 Pa. Super. 297, 134 A. 2d 238 (1957). In our opinion, a tax applied to the privilege of having a business place within the city imposes a reasonable scheme of taxation. In contrast, petitioner's demand that the city be required to tax all professional acts performed within its municipal boundaries, appear to be impractical. We believe that the uniformity clause of our State Constitution and the equal protection clause of the Federal Constitution do not impose an ironclad rule of equality so as to inhibit flexible interpretation of tax ordinances. Commonwealth v. Rohm and Haas Co., 28 Pa. Cmwlth. 430, 386 A. 2d 909 (1977)."

Finally, defendants claim that the City may not tax a partnership and the partners individually on the theory that it constitutes duplicate taxation, citing Pittsburgh v. Houston, 8 Pa. Commonwealth Ct. 468, 303 A. 2d 860 (1973). Since there is no evidence before us that the City intends to impose its business privilege tax on Shoemaker, Thompson & Ness individually, as well as on the partnership, we need not reach this issue. Additionally, defendants have given us no authority to support their contention that since the state and Federal governments have classified individual partners, and not the partnership, as the taxable entities, the City

has no authority to tax a partnership. The law is to the contrary. Partnerships may be subject to a municipal gross receipts tax: Pittsburgh v. Houston, supra.

In view of what we have said we shall enter an order finding the defendants in contempt of court.

### ORDER

And now, July 3, 1980, the rule heretofore issued on defendants to show cause why they should not be held in contempt of court is made absolute and said defendants are hereby found in contempt of court. We hereby set a hearing for Monday, July 21, 1980 at 3:45 p.m. for the purpose of determining what steps the court shall take to enforce its prior order in the event the defendants have not in the meantime complied with the order by permitting the City to inspect their books and records, covering the names of their clients in consonance with the foregoing opinion.

An exception is granted to defendants.