H. Craig Lewis, State Senator, Petitioner *v.* Governor Richard Thornburgh and Jay Waldman, Respondents.

Argued June 8, 1982, before President Judge CRUMLISH and Judges ROGERS, BLATT, CRAIG and MAC-PHAIL.

*Richard J. Welsh*, Legal Counsel, for petitioner.

*John Philip Krill*, Deputy General Counsel, for respondents.

OPINION BY JUDGE CRAIG, August 5, 1982:

In this petition for review addressed to our original jurisdiction, the petitioner, Minority Chairman of the Appropriations Committee of the Senate of Pennsylvania, has requested that, by way of specific relief, we order the respondents, the Governor and the General Counsel of the Commonwealth, to provide the petitioner with data characterized by the petition as "budgetary information."

The petition, as amended, avers that the petitioner, on behalf of the minority members of the committee, issued a written request of August 14, 1981 to all cabinet secretaries of the Commonwealth for information concerning individuals employed as legal counsel in their respective departments, including, as to each: name, city of residence, date of employment, salary when appointed, current salary, salary range and terminations in such positions since October 31, 1980.

Similarly, the petition avers a like request, dated August 18, 1981, to all directors of state executive

agencies, authorities and boards requesting, as to employed legal counsel, like information concerning name, residence, employment date and salary, as well as name, date retained, retainer fee and fees paid to date as to each bond counsel and outside counsel.

Also averred is a letter of August 21, 1981, from the Executive Deputy General Counsel on behalf of respondent General Counsel, directing the cabinet members and executive agency directors not to release information until the General Counsel could review the request.

The petition further avers that the petitioner thereafter sent additional written requests to the Governor, as well as to the cabinet secretaries and agency heads, without receiving a reply, and then, after receiving a further letter from the Executive Deputy General Counsel indicating that such requests should be addressed to the Office of General Counsel, also sent a written request to the Office of General Counsel, without receiving any further reply.

The petition's Count One is based upon the Act of June 21, 1957, P.L. 390, *as amended*, §2, 65 P.S. §66.2, popularly known as the Right-to-Know Law. Count Two of the petition is based upon Section 620 of the Administrative code, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §240, set forth below.

Now before us for decision are the respondents' preliminary objections raising (1) as to the Right-to-Know Law, absence of original jurisdiction, failure to exhaust administrative remedies, demurrers and a claim that the information is privileged, and (2) as to the Administrative Code, claims of non-justiciable political controversy, usurpation of executive function, and a demurrer that the requested information is not the type covered by the Administrative Code duty, along with a claim that such duty is to be treated as directory rather than mandatory.

## Count One: Right-To-Know Law

As to Count One, we sustain the preliminary objection based upon the absence of original jurisdiction here. Section 4 of the Right-to-Know Law, 65 P.S. §66.4, by way of affording relief, provides only that any citizen denied a right under the operative sections of the Act "may appeal from such denial." Accordingly, Pennsylvania courts have negated the availability of original jurisdiction. The Supreme Court, in *Wiley v. Woods*, 393 Pa. 341, 350, n. 9, 141 A.2d 844, 849, n. 9 (1958) noted that an appeal was the exclusive remedy and mandamus was improper; in similar vein, *Barton v. Penco*, Pa. Superior Ct. , , n. 2, 436 A.2d 1222, 1223, n. 2 (1981), the Superior Court has recently noted, by way of dictum, that equitable relief is unavailable because of the exclusiveness of the statutory remedy of appeal.

Moreover, the demurrer as to a cause of action under the Right-to-Know Law is sustainable because Section 2 of that Law, 65 P.S. §66.2, provides that:

Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania.

And Section 3, 65 P.S. §66.3, affords the citizen only the right to extract or copy the records while they are in possession of the public custodian. Accordingly, the Act clearly gives no one the right to demand that information be assembled and transmitted, as distinguished from the right to inspect.

Therefore, Count One does not state any cause of action under the rights afforded by the Right-to-Know Law, nor any cognizable within our original jurisdiction, and hence must be dismissed.

## Count Two: Governor's Budgetary Data Duty

Section 620 of the Administrative Code expressly requires the Governor, within fifteen days after the

end of each month, to make "monthly expenditure data available to the Majority and Minority Chairmen of the Appropriations Committees of the Senate and the House of Representatives." The requirements are detailed, requiring each month's submission to include the preceding months of the fiscal year, and, at the discretion of those chairmen to be provided "either in finished reports or on computer tapes." By fund and appropriation and by organization within each department, the data is to include:

— number of filled personnel positions and their cost;

— itemized personnel vacancies and their cost;

— new positions created and their cost;

— wage and overtime cost;

— allotments and expenditures for itemized personnel expenses, operating expenses and fixed assets; and

— the rate of expenditure of major subsidy and grant appropriations.

Subsection (a) concludes with the provision on which the petition here primarily relies, reading as follows:

In addition to the above specified budgetary data, the Governor shall make available any other budgetary data as may be requested from time to time by the Majority and Minority Chairman of the Appropriation Committees of the Senate and House of Representatives.[1]

---

[1] At this juncture we can dispose of two additional objections raised by respondents in the brief alone, the contention that the Governor and General Counsel are not proper parties respondent, and a claim that the information sought is available elsewhere, *i.e.*, in the State Library and in certain other executive and legislative offices. Because these objections have not been formally pleaded, we cannot tell for sure to which count they are directed.

If applied to Count One, they possibly could support our dismissal of that count, and hence can be put aside as unneeded for that purpose.

In support of the objection that reliance upon this Administrative Code provision presents a non-justiciable political controversy, the respondents cite the non-justiciability criteria from *Baker v. Carr*, 369 U.S. 186, 217 (1962) as quoted by the Pennsylvania Supreme Court in *Zemprelli v. Daniels*, Pa. , , 436 A.2d 1165, 1169 (1981). The respondents direct attention only to the first two criteria, which we listed in *Zemprelli v. Thornburgh*, 47 Pa. Commonwealth Ct. 43, 50-51, 407 A.2d 102, 106 (1979) as:

1. A textually demonstrable constitutional commitment of the issue to a coordinate governmental branch, *i.e.*, whether the Pennsylvania Constitution commits the power exclusively to one branch for "self-monitoring," Sweeney v. Tucker, 473 Pa. 493, 510, 375 A.2d 698, 706 (1977); or

2. A lack of judicially discoverable and manageable standards for resolving the questions.

As to the first criterion, there is no doubt that the Pennsylvania Constitution commits the budget preparation function to the executive, Pa. Const. art 8, §12, but the legislative request to receive information here is clearly not a request for judicial implementation of a

---

If applied to Count Two, these objections would have no merit: The Administrative Code provision expressly names the Governor as the responsible party, and the petition averments, which must be accepted as true for these purposes, state that executive branch correspondence advised the petitioner to direct the requests to the General Counsel. The further argument, that the petitioner should obtain the information by his own staff because it is available in various state offices, can have no application to the Administrative Code provision which, although it uses the phrase "shall make available," also makes clear that the data covered by that subsection "shall be prepared" and "provided either in finished reports or on computer tapes," with the preparation and provision to be done by the Governor.

legislative intrusion into the executive role of the budgeting process which is constitutionally shared between the executive and the legislature. Moreover, the same section of the Pennsylvania Constitution contains a specific authorization and mandate that

> Annually, at the time set by law, the Governor shall submit to the General Assembly:
> ... (i) Projected operating expenditures classified by department or agency and by program, in reasonable detail....

Thus, the Administrative Code section implements the constitutional section, so that enforcement of the Administrative Code duty would support the constitution, not conflict with it. Hence, there is no need to construe the clear commands of the Administrative Code section as merely directory, as respondents would have us do, in order to save the validity of the provisions. Construed as mandatory, the statute is not unconstitutional because it does not authorize one branch to perform any "functions belonging to the other nor exercise such influence over the persons conducting the affairs or other departments as to control their actions." *Bailey v. Waters*, 308 Pa. 309, 313, 162 A. 819, 821 (1932).

As to the second criterion, feasibility of judicial management of the issue is clearly no problem where all that is sought is information, as distinguished from a compulsion of decision-making or program action.

Indeed, this question, concerning whether or not public information shall be supplied, is in itself plainly not a political question at all; information, as an ingredient for the making of governmental policy, is distinct from the political process of policy formulation. A possibility that persons on either side of a controversy might use information for partisan purposes or for seeking public support does not make the transfer of information a political matter in the governmental policymaking sense.

Therefore, we cannot regard the question as a non-justiciable one, and we will overrule that preliminary objection.

By virtue of the constitutional provision and the nature of the request, as discussed above, we also cannot perceive, in this request for information, any usurpation of a function of the executive. The petitioner is not seeking to displace the executive in the performance of functions assigned to the Governor, but asks only that a constitutional and statutory duty of routine nature be performed by the Governor. The fact that the request is made by a single member of the legislature does not disable it, in view of the point that Section 620(a) of the Administrative Code, without contravening any provision of the constitution, specifically authorizes the operative request to be made by the Minority Chairman of the Appropriations Committee of the Senate, the capacity in which petitioner here sues.

On the point of privilege as to the content of the information, the respondents characterize the request for a list of legal counsel position terminations as one which could go to the impairment of individual reputations. However, the respondents acknowledge that a record showing that employment has commenced or ended is, in itself, not privileged, and we can read the request as having only that effect.

Finally, respondents' demurrer, on the ground that the information sought is not "budgetary data" within Section 620(a) of the Administrative Code, must be overruled. That subsection not only calls for monthly expenditure data, including information as to filled and vacant personnel positions and their cost, but it also calls for "any other budgetary data as may be requested" by the chairman named. Public payroll is fundamentally a budgetary matter, and detail as to legal counsel payroll, consisting of positions, vacancies,

incumbents and salaries, is not external to budget concerns in any way. Similar information as to bond counsel and outside counsel hired by contract also necessarily involves budgetary detail.

A cause of action is stated in terms of the Administrative Code.

Therefore, the preliminary objections to Count One (except as to the claim of privilege) are sustained, and the preliminary objections to Count Two are overruled.

ORDER

Now, August 5, 1982, respondents' Preliminary Objections Nos. 1a, 1b(1), 1b(3), and 1c are sustained, and Count One is dismissed; the respondents' Preliminary Objections Nos. 1b(2), and 2a(1), (2), (3), (4) are overruled.

--------

CONCURRING AND DISSENTING OPINION BY JUDGE MACPHAIL:

I concur with the majority's disposition of the preliminary objections to Count One of the Petition for Review. I respectfully dissent to the majority's disposition of the preliminary objections to Count Two because I am of the firm opinon that Count Two presents to this Court a non-justiciable issue. I do not believe this Court should intervene in what appears to me to be essentially a political dispute between the Minority Chairman of the Senate Appropriations Committee and the Governor over information that may or may not be "budgetary data" under Section 620 of the Administrative Code and may or may not be "reasonable detail" information under Article VIII, Section 12 of the Constitution of Pennsylvania. The Petitioner

would not be prejudiced by our failure to intervene here because we have indicated that he can obtain the information he seeks under the "right-to-know-law" if he sends someone to obtain it.

If I could be certain that the majority's decision in this case would be limited to the facts of this case, I might not be so concerned. What alarms me is that our decision in this case opens up a whole new area of law where this Court may be called upon in the future to determine what is or is not "budgetary data" and whether or not the Governor has fulfilled his constitutional obligation to submit budget information in "reasonable detail." To me, these are areas where the courts should hesitate to adjudicate unless there is no other way to resolve the dispute. *Baker v. Carr*, 369 U.S. 186 (1962). As I have indicated, this is not the situation in the case which is not before us.